UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TIEN WEN YUAN,

                    Plaintiff,

      v.

STATE FARM FIRE AND CASUALTY
COMPANY,

                    Defendant.

**MEMORANDUM AND ORDER**
19-CV-4921 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

Tien Wen Yuan ("Plaintiff") filed this action against State Farm Fire and Casualty

Company ("Defendant") for breach of an insurance coverage policy.  Defendant moves pursuant

to Federal Rule of Civil Procedure 56 to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiff and her daughter each own a 50% interest in property located on 48-01 216th

Street, Queens, New York ("the Property").  (Pl.'s Resp. 56.1 ¶ 4, ECF No. 32-1; *see also* Ex. F.

("Deed"), Mule Decl., ECF No. 34-6.)  Beginning on or about June 19, 2013, Defendant issued

Plaintiff a homeowner's insurance policy (the "Policy") for the Property.  (Pl.'s Resp. 56.1 ¶ 6;

Ex. C, Mule Decl., ECF No. 49-3.)  The Policy renewed annually.  (Pl.'s Resp. 56.1 ¶ 6.)  For the

coverage period between June 19, 2018, through June 19, 2019, the Policy covered an "insured

---

[1] Unless otherwise indicated, the undisputed facts are taken from the parties' statements of material facts and annexed exhibits pursuant to Local Rule 56.1.  To the extent any fact is disputed, it is so indicated.  Facts that are not contradicted by citations to admissible evidence are deemed admitted.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("if the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").  Further, the Court does not consider arguments and legal conclusions contained in the parties' 56.1 statements.  *See, e.g., Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record. They should not contain conclusions[.]" (emphasis omitted)), *aff'd*, 56 F. App'x 27 (2d Cir. 2003).

location," which was defined as, among other things, "the residence premises," "the part of any other premises, other structures and grounds used by [Plaintiff] as a residence," and "any part of a premises not owned by an insured but where an insured is temporarily residing." (Ex. G (the "Policy") at 2,[2] Mule Decl., ECF No. 34-7.) The Policy stated that Defendant would "cover the dwelling used principally as a private residence on the residence premises shown in the Declarations." (*Id.* at 25.) Moreover, the Policy defined "residence premises" as "the one, two, three or four-family dwelling, other structures and grounds; or that part of any other building; where [Plaintiff] reside[s] and which is shown in the Declarations [appended to the Policy]." (*Id.* at 24.)

On March 30, 2018, the City of New York Department of Buildings issued a vacate order to the "OWNERS, LESSEES, TENANTS [and] OCCUPANTS" of the "ENTIRE" Property because "there [was an] imminent danger to life or public safety or safety of the occupants or to property," resulting from Plaintiff "[i]llegally convert[ing]" the "1 Family house into 10 SRO [single room occupancy] units with key locks, without providing required means of egress, fire alarm, and sprinkler systems, [r]endering it unsafe to occupy." (Ex. J, Mule Decl., ECF No. 34-10.) A fire occurred at the Property on September 26, 2018, and, as a result, Plaintiff claimed a total loss of the Property to Defendant under the Policy. (Pl.'s Resp. 56.1 ¶ 3.) On May 28, 2019, Defendant disclaimed coverage and denied Plaintiff's claim on three grounds: (i) the Property did not constitute a "residence premises" within the meaning of the Policy because Plaintiff did not reside there; (ii) the Property was not a "dwelling" within the meaning of the Policy because it was not "used principally as a private residence on the residence premises"; and, (iii) Plaintiff concealed material facts and made material misrepresentations in the

---

[2] Citations to the Policy refer to the ECF page number.

presentation of her claim in violation of the concealment or fraud provision of the Policy.  (Pl.'s Resp. 56.1 ¶ 10).

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim.  *See Celotex Corp.*, 477 U.S. at 325.  Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).  The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

Defendant raises several independent reasons why it contends coverage was properly disclaimed here, including that the Policy did not cover the loss because (1) Plaintiff did not reside at the Property at the time of the fire, (2) the Property was not a one, two, three or four-family dwelling at the time of the fire, (3) the Property was not used principally as a private residence, and (4) Plaintiff made a material misrepresentation when she presented her claim.

3

(*See generally* Def.'s Mem., ECF No. 52.)  Moreover, Defendant contends that, even if fact issues remain regarding coverage, it is entitled to judgment that Plaintiff has only a one-half insurable interest in the Residence.

## I.   Terms of the Policy

### A.  Residence

Defendant argues that the Property was not a "residence premises" under the Policy for which coverage was extended.  (*Id.*)  On this ground, Plaintiff contends that whether she resided at the Property is a "question of fact to be determined at [a] hearing." (Pl.'s Opp'n. at 12, ECF No. 57.)

The Court agrees.  Under New York law,[3] an insurance contract is construed in the same manner as any other contract and should be "interpreted to give effect to the intent of the parties as expressed in the clear language of the [Policy]."  *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006).  Courts must interpret unambiguous contract provisions according to their "plain and ordinary meaning."  *Bullseye Rest., Inc. v. James River Ins. Co.*, 387 F. Supp. 3d 273, 280 (E.D.N.Y. 2019).  "[A] contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Chesapeake Energy Corp. v. Bank N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (quotation marks and citation omitted).  Conversely, contractual

---

[3] Both parties cite to New York law when making argument to the Court concerning interpretation of the Policy. Thus, it appears both parties agree that New York law applies.  "This shared premise is sufficient to establish the applicable choice of law." *Deer Mountain Inn LLC v. Union Ins. Co.*, 541 F.Supp.3d 235, 242 n.9 (N.D.N.Y. 2021) (internal quotation marks omitted) (citing *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)); *see also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'") (quoting *Tehran-Berkeley Civ. & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)).

terms are unambiguous if they have "'a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion.'" *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (quoting *Breed v. Ins. Co. N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)). "Whether a contract term is ambiguous is a question of law." *Curry Rd. Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990).

Plaintiff contends that the Policy does not define "reside" and thus must be "interpreted against [Defendant]." (Pl.'s Opp'n at 2.) Not quite. Only ambiguities in a policy are to be construed against the insurer. *See ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022); *see also White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007) ("If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer"). An unambiguous term, conversely, is to "be given its plain, ordinary, and popularly understood sense." *Covic v. Allstate Indem. Co.*, No. 16-cv-00050, 2017 WL 5054743, at *4 (N.D.N.Y. Sept. 25, 2017) (quoting *Canfield v. Peerless Ins. Co.*, 262 A.D.2d 934, 934–35 (4th Dep't 1999)).

Here, the Policy covers only "the dwelling used principally as a private residence on the residence premises," which the Policy does define. (Policy at 25.) Indeed, "residence premises" is defined as "the one, two, three or four-family dwelling, other structures and grounds; or that part of any other building; where [Plaintiff] reside[s]." (*Id.*) While the Policy does not define the term "residence," the term is far from elusive. Indeed, residence means "[t]he place where one actually lives." *Residence*, Black's Law Dictionary (11th ed. 2019); *see also Residence*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/residence ("the act or fact of dwelling in a place for some time" or "the place where one actually lives"); *Covic*,

2017 WL 5054743, at *5 (residence refers to "something more than temporary or physical presence and requires at least some degree of permanence and intention to remain, although not necessarily the intent to make that place a 'fixed and permanent home,' i.e., a domicile" (quoting *N.Y. Cent. Mut. Fire Ins. Co. v. Kowalski*, 195 A.D.2d 940, 941 (3d Dep't 1993) and *Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.*, 51 N.E.3d 521 (N.Y. 2016))).

Against this backdrop and considering the Policy as a whole, the Court concludes that the Policy unambiguously covers only the location where Plaintiff actually lived. The Court's conclusion is consistent with both federal and state courts that have considered similar policy language. *See, e.g.*, *Covic*, 2017 WL 5054743, at *5 (collecting cases holding that insurance policy with similar language covered the location where the insured lived); *D'Amico v. Pa. Millers Mut. Ins. Co.*, 420 N.E.2d 88, 88 (N.Y. 1981) (affirming summary judgment for insurer where "the homeowner's policy . . . , by its expresses terms, would cover . . . insured only if he were a resident of his parents' household"); *Metro. Prop. & Cas. Ins. Co. v. Pulido*, 271 A.D.2d 57, 58, 61 (2d Dep't 2000) (holding that, where coverage was for "a one-family dwelling used as a private residence" by the insured, the policy was "only intended to afford coverage for places where the insured live"). Thus, if Plaintiff did not live at the Property during the June 19, 2018, through June 19, 2019 period covered by the Policy, coverage was properly denied.

And, the Court cannot resolve this question conclusively in either direction. That is, there remains a disputed fact respect to where Plaintiff actually lived at the time of the fire. Defendant contends that Plaintiff did not live at the Property between April 2018 and October 2018, meaning that Plaintiff did not live there during any time covered by the Policy in effect at the time of the fire. (Def.'s 56.1 ¶¶ 25, 26.) To support this fact, Defendant points the Court to Plaintiff's testimony at the October 30, 2018 hearing, at which Plaintiff was appearing to address

her occupancy violations.  In this testimony, Plaintiff seems to admit that she lived in Flushing in

October 2018 and had not lived at the Property since as early as March 30, 2018:

> HEARING OFFICER NUNEZ:  . . .  So you're saying from when - - starting from when were you not at this location?
>
> MS. YUAN:  April.  As soon as March 30, April I already left.
>
> HEARING OFFICER NUNEZ:  Okay.  So you've never - - you don't go back to that location?
>
> MS. YUAN:  No . . .
>
> .        .        .
>
> HEARING OFFICER NUNEZ: . . . I want the record to be clear.  You had a vacate order in March, but you allowed a friend to stay in June.
>
> MS. YUAN:  I didn't know he came.
>
> HEARING OFFICER NUNEZ:  Oh.
>
> MS. YUAN:  . . . . But actually, I moved to Flushing.  I'm in Flushing.

Ex. R-2 at 8:23–9:11, 48:20–49:7, ECF No. 46-1.[4]

This testimony, on its own, could establish that Plaintiff did not reside at the Property at

the time of the loss.[5]  But, the Court cannot consider this testimony in a vacuum.  Defendant also

points the Court to Plaintiff's February 19, 2019 examination under oath, conducted as part of

Defendant's investigation of the claim.  (Def.'s 56.1 ¶ 38.)  In that examination, Plaintiff testified

that she lived at the Property at the time of the fire but stayed with her daughter on the weekends.

(Ex. D at 8:7–10:1, Mule Decl., ECF No. 34-4.)  At that examination, Plaintiff claimed that she

---

[4] The Court refers to the page numbers assigned by the ECF system for this exhibit.

[5] Plaintiff disputes whether the Court may rely on her sworn testimony from the OATH proceeding, contending that it is inadmissible hearsay.  (Pl.'s Opp'n at 11, ECF No. 57.)  But, this testimony is a statement by a party opponent that is not hearsay.  *See* Fed. R. Evid. 801(d)(2).  Moreover, the Court resolved the parties' disputes concerning exhibits at the July 29, 2021 status conference.

thought the vacate order did not apply to her as the owner of the Property but to the other tenants. (*See id.*)  Moreover, in a separate examination of Plaintiff's daughter conducted as part of the same investigation, Plaintiff's daughter testified that Plaintiff did not move into the Flushing apartment until October 2018.  (*See* Ex. E at 5:17–20, Mule Decl., ECF No. 34-5.)  While Defendant contends that this conflict of fact is a "sham" created by Plaintiff, it is not clear to the Court whether Plaintiff's testimony at the OATH hearing—where she had an incentive not to be found in further violation of occupancy ordinances—or at the 2019 examination—where she had an incentive to establish insurance coverage—is more reliable.[6]  Whether and when Plaintiff is credible are questions for a fact finder, not for the Court to resolve at summary judgment.[7] Accordingly, Defendant's motion for summary judgment is denied on this ground.

### B. One, Two, Three-or Four-Family Dwelling

The Policy defines "residence premises" as "the one, two, three or four-family dwelling, other structures and grounds; or that part of any other building; where [Plaintiff] reside[s]."

---

[6] Defendant directs the Court to a number of cases applying the sham issue doctrine.  (Def.'s Mem. at 15–17, ECF No. 52.)  The cases support the proposition that the Court may "consider whether the conflict creates a credibility issue preventing summary judgment from being entered." *Webb v. Zimmer, Inc.*, No. 214-cv-01106, 2019 WL 438361, at *7 (E.D.N.Y. Feb. 4, 2019) (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2738 Affidavits in Support of or in Opposition to Summary Judgment (4th ed.).) Moreover, Defendant contends that Plaintiff should be estopped from refuting the testimony from the OATH hearing.  (Def.'s Mem. at 17–19.)  One of the relevant inquiries for determining whether estoppel applies is whether the party "succeeded in persuading a court to accept that party's earlier position[.]"  *Lia v. Saporito*, 541 F. App'x 71, 74 (2d Cir. 2013).  Defendants did not, however, include the OATH officer's November 8, 2018 decision in its exhibits for the Court to assess whether estoppel applies.  Absent this evidence, the Court is at a loss to how it may determine whether estoppel applies.  *See Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369, 374 (S.D.N.Y. 2004) ("To simply have offered an argument that is inconsistent with the position advanced before [the court] is not enough, however, to warrant the invocation of judicial estoppel").

[7] The cases Defendant cites to in support of its contention that the Court should resolve this issue at summary judgment are inapposite because none include a similar factual dispute as to where the insured actually lived at the time of the relevant loss or involve two equally unreliable statements by the insured.  *See, e.g.*, *Metro. Prop. & Cas. Ins. Co. v. Pulido*, 271 A.D.2d 57, 59 (2d Dep't 2000) ("[T]he Perdues did not reside at the premises at the time the policy was issued or at the time the . . . incident took place."); *Vela v. Tower Ins. Co. N.Y.*, 83 A.D.3d 1050, 1051 (2d Dep't 2011) (court disregarded Plaintiff's affidavit submitted as part of motion where it conflicted with her earlier deposition testimony in the action); *Tower Ins. Co. N.Y. v. Brown*, 130 A.D.3d 545, 546 (1st Dept. 2015) ("Brown has admitted the allegations in the complaint that he did not reside in the premises when the incident occurred"); *MIC Gen. Ins. Corp. v. Campbell*, 181 A.D.3d 428, 428–29 (1st Dep't 2020) (insurer demonstrated through insured's own statements "that [insured] did not reside at the premises").

(Policy at 24.)  Defendant argues that Plaintiff's use of the Property for 10 single residence occupation rooms meant that the Property was not being used as a one, two, three, or four-family dwelling and was thus not covered as a resident premise.  Plaintiff largely glosses over this argument.  (*See generally* Pl.'s Opp'n.)  Despite Plaintiff's failure to address this argument, the Court again finds that Defendant has failed to meet its burden.

Defendant maintains that because the vacate order remained in effect at the time of the fire, the Property remained a "10 SRO unit house."  (Def.'s Mem. at 13; *see also* Ex. J ("Vacate Order"), Mule Decl., ECF No. 34-10.)  The only factual support Defendant offers for this argument is the following testimony from Plaintiff's February 10, 2019 examination under oath:

Q: Now, was this vacate order ever removed or satisfied?

A: No.

Q: So it still applies as of today; is that correct?

A: Yeah.  Yes.

(Ex. D at 208:8–12, Mule Decl.)

In response, Plaintiff states that "the conditions that led to the issuance of the vacate order had been removed" at the time of the fire.  (Pl.'s Resp. 56.1 ¶ 28.)  And, Plaintiff's statement is consistent with what the OATH officer determined in the September 6, 2018 decision.  That is, with respect to Plaintiff's conversion of the Property to include unpermitted additional dwellings, the officer "credit[ed]" Plaintiff's testimony and "f[ou]nd that the summons were corrected one day after service of the summons by removing the tenants immediately."  (Ex. K at 5, Mule Decl., ECF No. 34-11.)  Thus, a day after receiving the summons related to the Vacate Order— which appears to have been issued on March 30, 2018 (*id.* at 2)—the Property was no longer

being used as a multi-resident space. Defendants offer no evidence suggesting that the Property continued to be used for 10 single occupancy rooms between June 19, 2018, through June 19, 2019, the period covered by the Policy. Indeed, with respect to determining whether Plaintiff "resided" at the Property, Defendant would like the Court to credit Plaintiff's statement that neither she nor anyone else lived at the Property after March 30, 2018. Defendant cannot have it both ways. Here again, the Court finds that issues of material fact remain with respect to the use of the Property at the time of the fire. Defendant's motion is denied on this ground.

### C. Private Residence

Defendant contends that, because Plaintiff listed the Property on Airbnb and generated rental income from the same, the Property was not used "principally as a private residence" and was thus not covered by the Policy. (Def.'s Mem. at 14–15.) Perhaps. But, Defendant has offered the Court no evidence suggesting that this was true at the time of the fire. Defendant directs the Court to Plaintiff's Airbnb records from March 3, 2016, to July 1, 2018, regarding reservations made at the Property during this period. (Ex. M ("Airbnb records"), Mule Decl., ECF No. 34-13.) The records, however, do not reveal whether the Property was rented on Airbnb during any time covered by the Policy. Indeed, the records show that the last Airbnb reservation was executed on June 12, 2018—days before the start of the Policy in effect at the time of the fire. (*Id.* at 91.[8]) Moreover, Plaintiff's tax returns for 2016 and 2017, presumably reflecting her rental income between 2015-16, reflect the same. (Ex. L ("Tax Returns"), Mule Decl., ECF No. 34-12.) In other words, these records reveal nothing about Plaintiff's use of the Property between June 19, 2018, and June 19, 2019, the time period relevant to the Policy at

---

[8] The Court refers to the PDF page number for this exhibit.

issue.  Defendant has failed to meet its burden.  Accordingly, its motion for summary judgment is denied on this ground.

## II.    Material Misrepresentations

Defendant argues that the Policy was voided because Plaintiff fraudulently concealed or misrepresented material facts when presenting her claim for the fire.  (Def.'s Mem at 21–23.)  To be clear, the Policy states that Defendant does not "provide coverage for an insured who, whether before or after a loss, has[ ] intentionally concealed or misrepresented any material fact or circumstance."  (Policy at 20.)  "In New York, to void an insurance contract on the basis of fraud, an insurer must show the insured willfully made a false and material statement [ ] with the intent to defraud the insurer."  *Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, No. 09-CV-3105, 2013 WL 3093118, at *4 (E.D.N.Y. June 18, 2013) (considering contract language similar to that present in the Policy here).  Defendant has not met its burden.

In arguing that Plaintiff made a material misrepresentation when presenting her claim, Defendant largely relies on the same "fact" it has failed to establish—where Plaintiff was living during the Policy period.  (Def.'s Mem. at 22.)  As the Court set forth above, this fact is disputed, and the Court cannot conclude at this juncture that there was a misrepresentation.  Defendant further points to Plaintiff writing "N/A" for the "vacancy" in her casualty report form to Defendant as a material misrepresentation.  (*Id.*)  Here again, because it is not established that the Property was in fact vacant at the time of the fire, the Court cannot conclude that this was false.  Finally, Defendant contends that Plaintiff "conceal[ed] the true nature" of the occupancy violations in the claim presentment form she submitted.  (*Id.* at 22–23.)  In this form, when asked to "list current code violations," Plaintiff wrote "multiple code for partitions."  (Ex. U, Mule Decl., ECF No. 34-21.)  Even if this could rise to the level of a misstatement, Defendant has not met its burden.  A material misstatement cannot provide the basis to void a contract unless it was

11

made with the intent to defraud. *See Harriprashad*, 2013 WL 3093118, at \*4. Defendant has not adduced evidence that any of Plaintiff's purported misstatements were made with the intent to defraud. Defendant's motion for summary judgment is denied on this ground.

## III.    Insured Interest

The parties do not dispute that Plaintiff owned only a 50% interest in the Property. (Pl.'s Resp. 56.1 ¶ 4; *see also* Deed at 4.) Plaintiff does not deny this fact and instead contends that her daughter was also an "insured" under the Policy. (Pl.'s Resp. 56.1 ¶ 4.)[9] The Court need not determine whether Plaintiff's daughter was an "insured" under the Policy because this fact is irrelevant to the instant motion. Indeed, the plain terms of the Policy instruct that "[e]ven if more than one person has an insurable interest in the property covered, [Defendant] shall not be liable: to the insured for an amount greater than the insured's interest[.]" (Policy at 35.) Plaintiff's daughter is not a part of this lawsuit, nor does Plaintiff assert any claims on her daughter's behalf. Thus, Plaintiff may recover only half the value of the Property, commensurate with her interest in it. *See, e.g.*, *Azzato v. Allstate Ins. Co.*, 99 A.D.3d 643, 648 (2d Dep't 2012) ("[t]he law of this State requires that the named insured have an insurable interest in the subject matter of the policy of insurance" (citation and quotation marks omitted)). Accordingly, Defendant's motion for summary judgment is granted on this ground.[10]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's insurable interest and DENIED on all other grounds. Plaintiff's

---

[9] Facts that are uncontroverted or unopposed will be deemed admitted. *See Giannullo*, 322 F.3d at 140 ("[I]f the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

[10] Plaintiff purports to "cross move" for summary judgment. Plaintiff did not file a memorandum in support of her motion nor did she submit a corresponding 56.1 statement. Plaintiff's arguments made in opposition to Defendant's

motion for summary judgment is DENIED.  The parties are directed to file a joint pre-trial order

on or before October 31, 2022.

SO ORDERED.

Dated:  Brooklyn, New York
         September 30, 2022

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

---

motion are not sufficient to entitle her to summary judgment, particularly because she maintains that a fact issue
exists with respect to her residence.  Any cross-motion by Plaintiff is denied.